UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MELISSA KING,

        Petitioner,

  - v. -

UNITED STATES OF AMERICA,

        Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

RECEIVED
SDNY PRO SE OFFICE

2015 JUL -2 A 9: 30

14 Cv. 7962 (JGK)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___7/1/15___

## THE PETITIONER'S REPLY TO HER PETITION FOR WRIT OF HABEAS CORPUS

1

For her reply to the government's response, which was filed on or about March 16, 2015, the petitioner states as follows:

REPLY

1.  The petitioner realleges and incorporates by reference herein all the allegations and contentions set forth in her motion, which was filed on or about September 24, 2014, as well as the Exhibits attached to her motion, which were filed on or about September 24, 2014.

2.  The petitioner admits for the purpose of this action the allegations contained in Paragraph 1 of The government's response (located on p. 1), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

    The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached memorandum of points and authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

3.  The petitioner admits for the purpose of this action the allegations contained in Paragraph 2 of The government's response (located on p. 1-2), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

    The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion,

and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

4.      The petitioner denies for the purpose of this action the allegations contained in Paragraphs 3 and 4 of The government's response (located on p. 2), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted. The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

5.      The petitioner denies for the purpose of this action the allegations contained in Paragraphs 5, 6, 7, 8, 9, 10, and 11 (located on p. 2-5) of The government's response (located on page 6), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the motion should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

In addition, regarding Paragraphs 5, 6, 7, 8, 9, 10, and 11 (located on p. 2-5) of The government's Response, the petitioner admits the following sentences, **only** to the extent that they are consistent with her motion (also with the exceptions addressed below): the second sentence in Paragraph 5; the second sentence of the first footnote; the first and the second sentences in Paragraph

3

6; the first, second, and third sentences in Paragraph 7; the fourth sentence in Paragraph 10; and the first and second sentences in Paragraph 11.

Regarding the first sentence in paragraph 6 (located on p. 3), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also alleges that any services were provided either through KingCare or through a prior company.

Regarding the second sentence in paragraph 6 (located on p. 3), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also denies that third-party administrative services include "determining eligibility for fund benefits," and alleges that eligibility is determined by the Plan documents and by the Trustees, though KingCare provided the information necessary to determine whether an individual fit within the requirements. Further, the petitioner also realleges that the Fund Professionals received their own copies of the records, so while a third-party may "[maintain] bank accounts for the funds," the Fund Professionals also monitored the bank accounts separately.

Regarding the third sentence of Paragraph 6 (located on p. 3), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also alleges that it should be noted that the petitioner was advised that the issue was not that the government actually believed that she "owned and controlled" the entities in question, but that the government could not obtain permission to indict the petitioner's parents (who actually owned KingCare, as the government was well aware) because they were elderly, and therefore, the government's only option was to proceed by arguing in court that KingCare was the petitioner's "alter-ego," even though this was not actually true. On

4

this point, it should also be noted that it is completely legal to "manage" an entity that is "owned" by another individual, and further, that an individual can be on life support and still "own" an entity. Moreover, it should be noted that, the petitioner was advised that there is no legal precedent for "transferring ownership" in the way that the government is attempting to do so in this case.

Regarding the first sentence in paragraph 7 (located on p. 3), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also alleges that any services were provided either through KingCare or through a prior company.

Regarding the third sentence in Paragraph 10 (located on p. 5), the petitioner realleges that the records were turned over repeatedly; that the government cannot rely on the contract for one argument, then disregard the contract when making another argument; and that neither the government nor the Local 147 Trustees civil attorneys has yet to point to any documents that were not turned over in the civil case prior to the petitioner's arrest (despite repeatedly stating this accusation), or to any "missing records." Further, the petitioner alleges that she believes that Castrovinci repeatedly asked for the records (which were turned over repeatedly) because he could not properly administer the Funds with his own software and with the bid that he offered to take over administering the Funds, so he was, in essence, stalling for time and looking for an excuse as to why he was unable to provide the same level of services as KingCare, as the Local 147 Trustees had become very used to extensive administrative support over the years.

The petitioner also realleges that the Fund Records were turned over repeatedly in the civil case prior to her arrest, and that the Department of Labor had an obligation to conduct an adequate investigation prior to her

arrest and prior to bringing any charges, including an adequate investigation of the extensive work product produced by KingCare. Here, the petitioner realleges that, instead of relying on the Fund Records during the proceedings to make its case, the government argued to have the Fund Records removed from the proceedings, as the government argued prior to the sentencing hearing that the EisnerAmper Report (which was submitted to the Court after the plea hearing, but prior to the sentencing hearing) violated the petitioner's Plea Agreement, as the Report utilized the original Fund Records to invalidate the government's accusations; to verify that the payments made from the Local 147 administrative expense account to the KingCare accounts were transparent and authorized; to verify that the additional work was completed by KingCare, as required by the Local 147 Trustees; to verify that the payments were listed on the Funds' Certified Financial Statements and could be traced to the Form 5500s; to verify that neither the petitioner nor KingCare prepared or executed these materials; and to verify that there was no basis in fact for the convictions, as there were no crimes in this case. (The petitioner also realleges that the government later argued that she had not accepted responsibility, as the petitioner's final sentencing submissions still included the EisnerAmper and Vasil Reports as attachments, which relied on the original Fund Records and on the original tax filings to show that no embezzlement or tax crime occurred in this case, and to show that there was no basis in fact for the convictions when the petitioner was sentenced.)

Regarding the fourth sentence in Paragraph 10 (located on p. 5), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also denies that she is guilty of the Local 147 Trustees' accusations, and that there was an embezzlement in this case, and realleges that KingCare filed extensive Counterclaims in civil court, which prompted the Local 147 Trustees and the Local 147 Trustees' civil attorneys to go to the Department of Labor, so that the petitioner and the petitioner's family's assets could be restrained,

preventing the petitioner and preventing KingCare from defending against their accusations in both civil and criminal court (and preventing the Trustees from being deposed, as they were supposed to be in the civil case prior to the petitioner's arrest in the criminal case, as addressed in the petitioner's submissions).

Regarding the first and second sentences in Paragraph 11 (located on p. 5), the petitioner admits for the purpose of this action the allegations contained in this sentence, **only** to the extent that they are consistent with her motion; the petitioner also denies that the Amended Answer claimed that the petitioner "was entitled to the entire amount that she took"; that "she had been tasked with a number of additional projects"; and that the petitioner produced "a large quantity of receipts and bills" that the petitioner "claimed justified her expenses." The petitioner denies these allegations, as the petitioner was an employee of KingCare, so the petitioner did not personally "take" or receive these payments; was not personally "tasked" with these projects; and did not personally produce the evidence in the civil case (which also confirms that there were no crimes in this case), as this evidence was produced in the civil case by the attorneys for KingCare and for the petitioner (also prior to the petitioner's arrest).

The petitioner also realleges that the payments were due to KingCare because KingCare completed extensive additional projects (as verified by the EisnerAmper and Vasil Reports), as required by the Local 147 Trustees; that KingCare was owed deferred compensation form the prior period, as the Local 147 Trustees deferred the Funds' administrative costs due to the lack of work in the industry (as confirmed by the petitioner's original petition, which was filed on September 24, 2014, and by the attached exhibits; and that the payments were received by KingCare and included in the company's books and records (which were prepared by KingCare's accounting firm), as verified

by the EisnerAmper and Vasil Reports, which were submitted to the Court during the proceedings.

Further, regarding the first and second sentences in Paragraph 11, the petitioner realleges that it is misleading and unethical for the government to continue to mention the website and to ignore the rest of the projects, given that this project was the least intensive project, and given that the evidence in discovery shows that the Local 147 Trustees required KingCare to complete far more extensive services, including 24-hour processing of checks (when a 90-day turnaround is the typical timeframe, especially given that this is a multi-employer fund with individuals working for more than one employer, which is significant, as the fact that the funds came from different employers has a significant impact on the level of work that was required in order to be able to administer the funds) and including a work projection study, which estimated future employer contributions for the following 12-15 years in that specific industry.[1]

The petitioner further realleges that the government's assertions in Paragraph's 5, 6, 7, 8, 9, 10, and 11 (located on pages 2-5) which are inconsistent with the original petition are false; that the government's assertions and accusations are not supported by any evidence; that they are

---

[1] Again, on page 16 of the EisnerAmper Report, Mr. Blaustein describes this project as follows:

Due to an amendment to the pension plan regulations the Board requested King Care to prepare a work study to estimate future employer contributions for the following 12-15 years in that specific industry. To complete this special project, King Care created special programs to complete a past analysis and work flow study, performed an analysis of the MTA work projections and held various discussions with the Union to confirm projected jobs. Additionally, historical work by shifts, rates of usage, and percentages of overtime, shift analysis and the effect of the market and possible budget constraints on different projects were taken into account in the completion of this multifaceted project.
(The Expert Report of Martin Blaustein, p. 16.)

contradicted by the actual evidence of this case, including the evidence that was attached to the petitioner's motion, as well as the Expert Reports that were submitted to the Court during the proceedings (specifically, the EisnerAmper and Vasil Reports, which verify that there were no crimes in this case); that they are contrary to the government's actual knowledge of this case, as proven by the Exhibits attached to the petitioner's motion, by the citations to the record (included in the petitioner's motion), by the attached declarations (including the case agent's statements on national television), and by the Expert Reports that were submitted to the Court during the proceedings (which verified that everything was transparent, authorized, fully disclosed, and properly reported, as advised by counsel and by KingCare's accounting firm).

6. The petitioner denies for the purpose of this action the allegations contained in Paragraph 12 of The government's response (located on page 6), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the motion should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

7. The petitioner denies for the purpose of this action the allegations contained in Paragraph 13 of The government's response (located on p. 6), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion,

and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

8.    The petitioner admits for the purpose of this action the allegations contained in Paragraphs 14, 15, 16, 17, 18, 19, 20, 21, 22, 2, 24, 25, 26, and 27 of The government's response (located on p. 6-10), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Specifically, regarding these paragraphs, the petitioner also denies the third sentence of Paragraph 17; the first sentence of Paragraph 20; and the second and third sentences of Paragraph 22.

Regarding the third sentence of Paragraph 22, the petitioner realleges that the government failed to submit any expert witness reports; the Catanzaro Declaration was prepared by an agent who was not certified, and is therefore unable to contradict the Vasil Report, and who, therefore, (very significantly) did not have a license to risk.

Finally, regarding Paragraphs 14, 15, 16, 17, 18, 19, 20, 21, 22, 2, 24, 25, 26, and 27, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

9.    The petitioner admits for the purpose of this action the allegations contained in Paragraphs 28 and 29 of The government's response (located on p. 10-11), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Finally, regarding Paragraphs 28 and 29, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

10.   The petitioner denies for the purpose of this action the allegations contained in Paragraphs 30, 31, and 32 of The government's response (located on p. 11-12), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Regarding Paragraph 30 (located on p. 11), the petitioner alleges that her claims are not procedurally defaulted, as outlined in the attached

Memorandum of Points and Authorities. (See The petitioner's Memorandum of Points and Authorities, p. 12-20.)

Regarding Paragraph 31 (located on p. 12), the petitioner alleges that her claims are not time-barred, as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's Memorandum of Points and Authorities, p. 6-10.)

Regarding Paragraph 31 (located on p. 12), the petitioner alleges that she did not waive her right to appeal or to collaterally attack her sentence, as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's Memorandum of Points and Authorities, p.10-12.)

11.    The petitioner admits for the purpose of this action the allegations contained in Paragraph 33 of The government's response (located on p. 12), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Specifically, the petitioner denies the first sentence of Paragraph 33, as her claims are not time-barred, as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's Memorandum of Points and Authorities, p. 6-10.)

Finally, regarding Paragraph 33, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

12.     The petitioner denies for the purpose of this action the allegations contained in Paragraph 34 of The government's response (located on p. 13), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Further, regarding the government's third footnote, it should be noted that, as the petitioner understands, the petitioner's papers are considered to be filed when they are placed in the prison mailing system. Therefore, as the petitioner understands, her motion was filed on September 24, 2014.

Further, the petitioner alleges that she addressed the delay in her motion (see The petitioner's motion, p. 281-287), and in the attached Memorandum of Points and Authorities (see p. 6-10).

13.     The petitioner admits for the purpose of this action the allegations contained in Paragraphs 35 and 36 of The government's response (located on p. 13-14), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Specifically, the petitioner also denies the fourth (and last) sentence of Paragraph 35; the second sentence of footnote four (located on p. 14); the first and second sentences of Paragraph 36; and the fifth (and last) sentence of Paragraph 36.

Finally, regarding Paragraph 35 and 36, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

14. The petitioner admits for the purpose of this action the allegations contained in Paragraphs 37 and 38 of The government's response (located on p. 15-16), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Specifically, the petitioner denies the second (and last) sentence of Paragraph 37.

Finally, regarding Paragraphs 37 and 38, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

15. The petitioner admits for the purpose of this action the allegations contained in Paragraphs 39, 40, 41, 42, and 43 of The government's response (located on p. 16-18), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 20-41).

Specifically, the petitioner denies the first and fifth (which is the last) sentences of Paragraph 39; the first sentence of Paragraph 40; the government's fifth footnote; the fifth and seventh sentences of Paragraph 40; the first sentence of Paragraph 41; the first sentence of Paragraph 42; and the first sentence of Paragraph 43.

Finally, regarding Paragraphs 39, 40, 41, 42, 43, and 44, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

16. The petitioner denies for the purpose of this action the allegations contained in Paragraph 44 of The government's response (located on p. 18), and in the government's sixth footnote, and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 20-41).

17. The petitioner admits for the purpose of this action the allegations contained in Paragraphs 45, 46, 48, 49, 50, 51, and 52 of The government's response (located on p. 18-23), and in the government's seventh, eighth, and ninth footnotes, **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 41-63).

Specifically, the petitioner denies the following sentences: the second and third sentences of Paragraph 45; the third, fourth, and fifth sentences of the government's seventh footnote; the first sentence of Paragraph 49; the second, third, fourth, fifth and six sentences of Paragraph 50; the first and third sentences of the eighth footnote; and the first, second, third, sixth and seventh sentences of Paragraph 51; and the first and fifth sentences of Paragraph 52.

Finally, regarding Paragraphs 45, 46, 48, 49, 50, 51, and 52, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

18. The petitioner admits for the purpose of this action the allegations contained in Paragraphs 53 and 54 of The government's response (located on p. 23-24), **only** to the extent that they are consistent with her motion. To the extent that

16

these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 63-104).

Specifically, the petitioner denies the following sentences: the second sentence of Paragraph 53 and the fourth sentence of Paragraph 54.

Finally, regarding Paragraphs 53 and 54, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

19.    The petitioner denies for the purpose of this action the allegations contained in Paragraph 55 of The government's response (located on p. 24-25), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

20.    The petitioner admits for the purpose of this action the allegations contained in Paragraphs 56, 57, and 58 of The government's response (located on p. 25-27), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 63-104).

Specifically, the petitioner denies the following sentences: the first and fourth sentences of Paragraph 56, and the first, fourth, fifth, seventh, eighth, twelfth sentences of Paragraph 58.

Finally, regarding Paragraphs 56, 57, and 58, the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

21.    The petitioner denies for the purpose of this action the allegations contained in Paragraph 59 of The government's response (located on p. 27), and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The Petitioner's Memorandum of Points and Authorities, p. 63-104).

22.    The petitioner admits for the purpose of this action the allegations contained in Paragraphs 60, 61, 62, and 63 of The government's response (located on p. 27-29), **only** to the extent that they are consistent with her motion. To the extent that these allegations are inconsistent with her motion, the petitioner denies these allegations.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and as outlined in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Specifically, the petitioner denies the following sentences: the third sentence of Paragraph 60; the first (and only) sentence of Paragraph 61; the first sentence of Paragraph 62; and the first (and only) sentence of Paragraph 63.

Finally, regarding Paragraphs 60, 61, 62, and 63 the petitioner alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

23. The petitioner denies for the purpose of this action the allegations contained in Paragraph 64 of The government's response (located on p. 29), and the government's tenth footnote, and alleges that the government has failed to set forth sufficient facts or law to show cause why the relief requested in the petition should not be granted.

The petitioner also realleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion, and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.)

Regarding the government's tenth footnote, the petitioner alleges that it would be extremely unethical for Mr. Schachter to submit a perjured affidavit, as the government seems to be advocating for; however, should the Court determine that additional information is necessary, the petitioner respectfully requests the relief identified in the attached Memorandum of Points and Authorities,

which includes for affidavits from the petitioner's court-appointed defense attorney, the prosecutors, the case agents, and the Trustees' civil attorney (who submitted documents to the court during the proceedings) to be submitted, as these are the individuals who would likely have to testify at a hearing, in order for the petitioner to prove the allegations identified in her motion. (See The petitioner's Memorandum of Points and Authorities, p. 114-115.)

24. In sum, the petitioner realleges that she admits the allegations in The government's response (p. 1-29), **only** to the extent that they are consistent with her motion, with this reply, and with the attached memorandum of points and authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.) To the extent that these allegations are inconsistent with her motion, the petitioner denies the government's allegations. The petitioner further alleges that her convictions are unlawful, as they were obtained in violation of her Constitutional Rights, as outlined in her motion and in the attached Memorandum of Points and Authorities. (See The petitioner's motion, p. 1-290 and The petitioner's Memorandum of Points and Authorities, p. 5-115.) Finally, the petitioner alleges that the government has failed to set forth sufficient facts or law in its response to show cause why the relief requested in the petition should not be granted.

24.
25. The petitioner further alleges that the government's position is not credible for the following reasons (among others): (1) the government's submission continues to cite Mr. Epstein's affidavit, which is proven to be perjured testimony by the Exhibits attached to the petitioner's motion; (2) the government's submission fails to mention the EisnerAmper Report, which verified the KingCare employees' job descriptions, as well as the percentages of time that each employee spent working on special projects for Local 147, and which invalidates that government's argument that the KingCare

employees were "servants"; (3) the government's submission continues to use inflammatory rhetoric, materially false statements, and, frankly, offense language in order to state a case against the petitioner, without pointing to any valid evidence of a crime, which continues to constitute prosecutorial misconduct. (See The government's response, p. 1-31.)

25. The petitioner refers to and incorporates herein by reference the attached Memorandum of Points and Authorities.

## PRAYER FOR RELIEF

27.
26. WHEREFORE, the petitioner requests that the relief stated in the original motion be granted.

The petitioner declares (or certifies, verifies, or states) under penalty of perjury that the foregoing is true and correct to the best of her knowledge.

The petitioner also declares (or certifies, verifies, or states) under penalty of perjury that the allegations in her motion, in this reply, and in the attached memorandum, that are not otherwise supported by citations to the record or other documents are true to the best of her knowledge, ability, and belief.

*This document (motion) was placed in the BOP mailing system on June 25, 2015.*

Dated:        Coleman, FL
              June 25, 2015

                              Respectfully,

                              *Melissa G. King*
                              Melissa G. King

EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MELISSA KING,

                      Petitioner,

       - v. -

UNITED STATES OF AMERICA,

                      Respondent.

14 Cv. 7962 (JGK)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO PETITIONER MELISSA KING'S MOTION TO VACATE AND
SET ASIDE HER CONVICTION AND SENTENCE**

                PREET BHARARA
                United States Attorney for the
                Southern District of New York
                One St. Andrew's Plaza
                New York, NY 10007

JENNIFER LANE GACHIRI
Assistant United States Attorney
   *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

    King's Embezzlement of Union Funds ............................................................................... 3

    King's Filing of False Tax Returns ..................................................................................... 6

    Charges ............................................................................................................................... 6

    King's Guilty Plea .............................................................................................................. 6

    King's Sentencing .............................................................................................................. 9

ARGUMENT ........................................................................................................................ 10

I.     King's Petition is Barred by the AEDPA's One-Year Statute of Limitations ................. 12

II.    Petitioner Waived Collateral Attacks on Her Sentence ..................................................... 13

III.   Petitioner's Guilty Plea was Knowing and Voluntary ...................................................... 15

    A.     Applicable Law ...................................................................................................... 15

    B.     Discussion ............................................................................................................. 16

IV.   Petitioner's Ineffective Assistance Claims are Meritless.................................................. 18

    A.     Applicable Law ...................................................................................................... 19

    B.     Discussion ............................................................................................................. 21

V.     Petitioner's Claims Regarding Prosecutorial Misconduct Are Wholly Unfounded ......... 23

    A.     Applicable Law ...................................................................................................... 24

    B.     Discussion ............................................................................................................. 24

VI.   Petitioner is Not Actually Innocent.....................................................................27

## Table of Authorities

**Federal Cases**

*Abdurrahman* v. *Henderson*, 897 F.2d 71 (2d Cir. 1990)..........................................................................20

*Bousley* v. *United States*, 523 U.S. 614 (1998)..........................................................................................11

*Bunkley* v. *Meachum*, 68 F.3d 1518 (2d Cir. 1995) ..................................................................................21

*Chang* v. *United States*, 250 F.3d 79 (2d Cir. 2001)..................................................................................30

*Coleman* v. *Thompson*, 501 U.S. 722 (1991) ............................................................................................11

*Darden* v. *Wainwright*, 477 U.S. 168 (1986)............................................................................................24

*Davison* v. *United States*, No. 97 Civ. 490 (LAP), No. 00 Civ. 3064 (LAP), 2001 WL 883122 (S.D.N.Y.
    Jul. 31, 2001)........................................................................................................................................21

*Dedushaj* v. *Graham*, No. 07 Civ. 5401 (JGK), 2008 WL 4858242 (S.D.N.Y. Nov. 7, 2008)................24

*Henderson* v. *Morgan*, 426 U.S. 637 (1976) ............................................................................................15

*Kaley* v. *United States*, 677 F. 3d 1316 (2014) ........................................................................................25

*Kapral* v. *United States*, 166 F.3d 565 (3d Cir.1999)................................................................................12

*Lockhart* v. *Fretwell*, 506 U.S. 364 (1993)..............................................................................................20

*Mason* v. *Scully*, 16 F.3d 38 (2d Cir. 1994)..............................................................................................20

*Massaro* v. *United States*, 538 U.S. 500 (2003) ......................................................................................11

*Mayo* v. *Henderson*, 13 F.3d 528 (2d Cir. 1994) ......................................................................................19

*McCarthy* v. *United States*, 394 U.S. 459 (1969) ....................................................................................15

*Moshier* v. *United States*, 402 F.3d 116 (2d Cir. 2005)............................................................................12

*Murray* v. *Carrier*, 477 U.S. 478 (1986) ..................................................................................................11

*Puglisi* v. *United States*, 586 F.3d 209 (2d Cir. 2009)..............................................................................22

*Strickland* v. *Washington*, 466 U.S. 668 (1984) ......................................................................................19

*Strouse* v. *Leonardo*, 928 F.2d 548 (2d Cir. 1991) ..................................................................................20

*United States* v. *Addonizio*, 442 U.S. 178 (1979) ....................................................................................10

*United States* v. *Aguirre*, 912 F.2d 555 (2d Cir. 1990)..............................................................................19

*United States* v. *Aiello*, 814 F.2d 109 (2d Cir. 1987)................................................................................25

*United States* v. *Bautista*, 23 F.3d 726 (2d Cir. 1994)..............................................................................24

*United States* v. *DiTommaso*, 817 F.2d 201 (2d Cir. 1987)......................................................................20

*United States* v. *Eisen*, 974 F.2d 246 (2d Cir. 1992) ................................................................................20

*United States* v. *Frady*, 456 U.S. 152 (1982)............................................................................................10

*United States* v. *Haynes*, 412 F.3d 37 (2d Cir. 2005)................................................................................14

*United States* v. *Javino*, 960 F.2d 1137 (2d Cir. 1992)..............................................................................20

*United States* v. *Jones*, 918 F.2d 9 (2d Cir. 1990) ....................................................................................20

*United States* v. *LaMorte*, 950 F.2d 80 (2d Cir. 1991) ............................................................................24

*United States* v. *Lee*, 523 F.3d 104 (2d Cir. 2008)....................................................................................13

*United States* v. *Maher*, 108 F.3d 1513 (2d Cir. 1997)..............................................................................15

*United States* v. *McCarthy*, 54 F.3d 51 (2d Cir. 1995)..............................................................................24

*United States* v. *Roque*, 421 F.3d 118 (2d Cir. 2005) ..............................................................................14

*United States* v. *Sanchez*, 790 F.2d 245 (2d Cir. 1986) ............................................................................20

*United States* v. *Torrellas*, 455 F.3d 96 (2d Cir. 2006) ............................................................................16

*United States* v. *Valentine*, 820 F.2d 565 (2d Cir. 1987)..........................................................................24

*United States* v. *Vegas*, 27 F.3d 773 (2d Cir. 1994) ................................................................................19

*United States* v. *Warren*, 335 F.3d 76 (2d Cir. 2003) .................................................................................. 11

*Vasquez* v. *United States*, No. 96 Civ. 2104 (PKL), 1997 WL 148812 (S.D.N.Y. Mar. 28, 1997) ............ 21

*Walker* v. *Jastremski*, 430 F.3d 560 (2d Cir.2005) ..................................................................................... 13

## Statutes

Title 18, United States Code, Section 3353(a) .............................................................................................. 9

Title 18, United States Code, Section 3582(c) .............................................................................................. 7

Title 18, United States Code, Sections 664 and 2 ........................................................................................ 1

Title 26, United States Code, Section 7206(1) .............................................................................................. 1

Title 28, United States Code, Section 2255 .................................................................................................. 1

## Rules

Federal Rule of Appellate Procedure 26 ....................................................................................................... 13

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the *pro se*
petition filed by Petitioner Melissa King ("Petitioner" or "King") to vacate and set aside her 72-
month sentence of imprisonment pursuant to Title 28, United States Code, Section 2255
("Section 2255").  On October 21, 2011, King pleaded guilty, pursuant to a plea agreement (the
"Plea Agreement," attached hereto as Exhibit A): to (1) embezzlement from Employee Benefit
Plans, in violation of Title 18, United States Code, Sections 664 and 2, and (2) subscribing to
false U.S. individual tax returns, in violation of Title 26, United States Code, Section 7206(1).
On June 21, 2012, the Court sentenced King principally to a term of 72 months' imprisonment.

King asserts numerous grounds for her requested relief, which are styled as either claims
that her trial counsel rendered ineffective assistance or as due process claims.  First, King argues
that her guilty plea was not knowing, intelligent, and voluntary due, among other things, to her
"compromised" medical condition. (Petitioner's Memorandum at 25, 33).  Second, King argues
that counsel was ineffective for: (1) coercing her to plead guilty (*id.* at 12); (2) failing adequately
to investigate the case (*id.* at 6, 60, 79); (3) failing to explain certain portions of the Plea
Agreement, including those concerning the loss amount and the right to file an appeal (*id.* at 20,
23, 69); (4) allowing her to plead guilty despite knowing that she was not physically competent
to do so (*id.* at 72); and (5) failing to file a motion to withdraw her guilty plea (*id.* at 76).  Third,
King argues that the Government was responsible for prosecutorial misconduct by, among other
things, failing to investigate the case and denying her her choice of counsel.  (*Id.* at 141, 144).
Fourth, King argues that she was denied the right to file an appeal.  (*Id.* at 187).  Fifth, King
argues that the Government denied her her right to counsel of choice.  (*Id.* at 248).  Sixth, King

argues that the Government compromised the adversarial process by seizing materials from the King Care offices. (*Id.* at 258). Finally, King argues that she is actually innocent. (*Id.* at 263).

For the reasons set forth below, King's motion should be denied in its entirety without a    3 hearing. First, the motion is time-barred, as it was filed more than one year after her conviction became final. *See* 28 U.S.C. § 2255(f). Second, the motion is barred by King's waiver of her right to appeal or collaterally attack her conviction or sentence. Third, King's claims are entirely without merit, and are refuted by, among other things, documentary evidence and King's own allocution during the October 21, 2011 guilty plea proceeding. In addition, King's Petition should be denied in its entirety because King has failed to affirmatively prove that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

The Government thus respectfully requests that the Court deny King's motion without a    4 hearing and affirm her conviction and sentence.

## BACKGROUND

From 2002 to 208, King pilfered more than $7 million dollars from the Local 147    5 "Sandhogs" union ("Sandhogs") employee benefit funds. The Sandhogs are responsible for excavating and building underground tunnels for transportation and utilities in the New York City area. King used the money she embezzled to support a lavish lifestyle consisting of trips on private jets, two apartments on Park Avenue, the purchase of show horses for her daughter, jewelry, a large Westchester home, a full staff of servants, and many other luxuries. King's embezzlement so financially devastated the Sandhogs' retirement funds that some elderly and retired union members were compelled to return to the dangerous and difficult work of the

Sandhogs in order support themselves.  King also defrauded the U.S. Treasury by failing to report the embezzled millions.[1]  (*See generally* PSR ¶¶ 10-18).

## KING'S EMBEZZLEMENT OF UNION FUNDS

For approximately 20 years, King provided third-party administrative services to the employee benefit funds of various labor unions in the New York City area.  (PSR ¶ 10).  Third-party administrative services typically include, among other things, collecting contributions for employee benefit funds from employers and employees, maintaining bank accounts for the funds, determining eligibility for fund benefits, and paying claims to beneficiaries of the funds.  (*Id.*).  King provided these services through companies that she owned and controlled, including, from at least 2002 until 2008, King Care LLC.  (*Id.*).

*6*

King's clients included three of the employee benefit funds associated with the Compressed Air and Free Air Foundations, Tunnels, Caissons, Subways, Cofferdams, Sewer Construction Workers Local No. 147 of New York, New Jersey States and Vicinity AFL-CIO.  (*Id.* ¶¶ 9-10).  This union, which is known as the "Local 147" or "Sandhogs Union," because of the nature of the work performed by its members, is responsible for underground or underwater construction projects, such as the construction of subway tunnels.  Pursuant to collective bargaining agreements with employers, Local 147 had established several benefit plans—

*7*

---

[1] While King's offenses are straightforward—she embezzled millions of dollars in employee retirement funds that had been entrusted to her and she failed to report the proceeds of this embezzlement as income on her tax returns—the procedural history of the case is quite complicated.  In this background section, the Government summarizes only the most pertinent facts that are relevant to resolving King's § 2255 motion.

including retirement benefit plans—for its members (collectively, the "Local 147 Funds"). (*Id.* ¶ 9).

From in or about September 2002 up to and including in or about November 2008, the defendant embezzled millions of dollars from the Local 147 Funds by writing unauthorized checks—using her signature authority—from the Local 147 Funds' bank accounts to King Care for King's personal benefit. (*Id.* ¶ 12). In total, the defendant transferred over $7 million from the Local 147 Funds to an account she controlled under the name of "King Care." (*Id.*). Instead of using the approximately over $7 million she took from the Local 147 Funds to pay for necessary and proper business expenses, King used the stolen funds to pay primarily for personal expenses. (*Id.*). For example, among other things, King illegally used Local 147 Funds to pay for jewelry, clothing, travel, automobiles, a personal chef, a private jet, and 10 horses that were used to participate in equestrian events. (*Id.* ¶ 12).

King attempted to conceal her theft from the Local 147 Funds in several ways. First, King mailed to fund participants financial statements that falsely overstated each participant's balance by failing to account for the millions of dollars that she had stolen from the Local 147 Funds. (*Id.* ¶ 13). Second, King took money from the funds in a manner intended to hide the full amount of her theft. (*Id.* ¶ 14). King took the money by using her check-signing authority to write checks from the Local 147 Fund accounts to an account held by King Care. (*Id.*) King would often make those checks out in the amount of $50,000 or in some other number that was higher or lower than $50,000 by $5,000 increments, such as $65,000 or $35,000, and would often write several checks on a single day or over a period of several days. (*Id.*). Third, King created various corporations and trusts that were nominally controlled and owned for the benefit of others, including family members, but which in fact were controlled by King. (*Id.* ¶ 15).

4

King transferred the assets and funds she acquired through her embezzlement to these trusts. (*Id.*)  For example, at the time of her arrest, the horses discussed above were nominally owned by an entity called "Blantyre Farms," which was nominally owned and controlled by her parents, Jerome and Mabel King, but was, in fact, controlled by King.  (*Id.*).

The Local 147 Funds discovered King's embezzlement in or about October 2008, and terminated her relationship with the funds, effective December 31, 2008.  (*Id.* ¶ 16).  Thereafter, representatives of the Local 147 Funds, including the third-party administrator hired to replace King, attempted to obtain from King the complete financial and other records of the Local 147 Funds, so that the funds could be properly audited and administered.  (*Id.*).  Despite repeated attempts to obtain these records, and despite a provision in the Agreements which expressly provided that all records of the Funds were the property of the Funds and were to be returned to the Funds when the Agreements were terminated, King failed to provide complete records.  (*Id.*). In June 2008, the trustees of the Local 147 Funds initiated a lawsuit (the Civil Lawsuit) against King and King Care, seeking monetary damages for the defendant's embezzlement.  (*Id.*).

In the Civil Lawsuit, King submitted an Amended Answer in which she claimed, among other things, that she was entitled to the entire amount she took from the Local 147 Funds because she had been tasked with a number of additional projects by the funds' Trustees, such as the creation of a website for the Local 147 union.  (*Id.* ¶ 17).  King also produced, in discovery in the Civil Case, a large quantity of receipts and bills which King claimed justified her expenses. However, neither the stated additional work nor the proffered bills justified the millions of dollars taken by King from the Local 147 Funds.  (*Id.*).

10

11

5

Of the over $7 million that King took from the Local 147 Funds, only approximately $3.6    12

million—the value of her salary paid during those years under the administrative agreements—

appears to be legitimate.

### KING'S FILING OF FALSE TAX RETURNS

King also filed false personal federal income tax returns, Forms 1040, for the tax years    13

from 2004 to 2007 because she did not claim on her tax returns the millions of dollars in

proceeds that she embezzled from the Local 147 Funds, which she used to pay for her and her

family's personal expenses. (PSR ¶ 18). In fact, in each of these tax years, and despite spending

millions of dollars in embezzled proceeds to pay her personal expenses, King claimed only

between approximately $200,000 and approximately $550,000 as personal income. (*Id.*).

### CHARGES

Superseding Information S3 10 Cr. 122 (JGK) (the "Information") was filed on    14

October 21, 2011, and contained two counts. Count One charged King with Embezzlement from

Employee Benefit Plans, in violation of Title 18, United States Code, Sections 664 and 2. Count

Two charged King with subscribing to false U.S. individual tax returns, in violation of Title 26,

United States Code, Section 7206(1).

### KING'S GUILTY PLEA

The Plea Agreement, dated October 20, 2011—executed by King, defense counsel, and    15

the Government—contained the terms under which King agreed to plead guilty to both counts of

the Information. Among other things, the Plea Agreement contained the parties' stipulations

concerning King's exposure under the United States Sentencing Guidelines (the "Guidelines" or

"U.S.S.G."). In the Plea Agreement, King and the Government stipulated to a Guidelines

sentence of 96 months. (Ex. A. at 8).

In the Plea Agreement, King also agreed that she would    16

> not file a direct appeal; nor bring a collateral
> challenge, including but not limited to an
> application under Title 28, United States Code,
> Section 2255 and/or Section 2241; nor seek a
> sentence modification pursuant to Title 18, United
> States Code, Section 3582(c), of any sentence
> within or below the Stipulated Guidelines Range of
> 96 months' imprisonment.

(*Id.* at 9).

The Government, in turn, agreed not to appeal any sentence at or above the Stipulated    17

Guidelines Range of 96 months' imprisonment. (*Id.*). The parties agreed that "[t]his provision

[was] binding on the parties[.]" (*Id.*). In addition, King agreed to pay restitution as ordered by

the Court, and agreed to forfeit property that was purchased with the illegal proceeds of her

scheme. (*Id.* at 2-6).

On October 21, 2011, King pleaded guilty before the Court. The Court conducted a    18

thorough allocution that complied in all respects with Rule 11 of the Federal Rules of Criminal

Procedure. Among other things, the Court confirmed that: (1) King was competent to enter a

plea of guilty; (2) she was pleading guilty knowingly and voluntarily; (3) she was aware of the

charges against her and the maximum penalties associated with the charges; (4) she was satisfied

with defense counsels' representation of her; and (4) she was aware of the constitutional rights

she was waiving by entering such a plea. (Plea Transcript, attached hereto as Exhibit B, at 6-38).

During the plea proceeding, the Court also advised King that he must order restitution (*id.*    19

at 24), and entered a preliminary Consent Order of Forfeiture. (*Id.* at 41). The Court then

directed King's attention to the Plea Agreement's appeal waiver and confirmed that King

understood that waiver:

> Q. There is a provision of the plea agreement that provides that it is agreed that the defendant will not file a direct appeal nor bring a collateral challenge including but not limited to an application under Title 28, United States Code, Section 2255 . . . , of any sentence of or below the stipulated guidelines sentence of 96 months' imprisonment. So, do you understand that?
> A. I do.
> Q: So, do you understand that if I sentence you to any sentence of 96 months' imprisonment or less, you have given up your right to appeal any such sentence or challenge any such sentence in any proceeding including any habeas corpus proceeding? Do you understand that?
> A: I understand that.

(*Id.* at 37-38).

Finally, the Court ensured that there was a sufficient factual basis for King's plea, and that King was pleading guilty because she was in fact guilty. (*Id.* at 32-39). In her allocution, King stated that between 2002 and 2008, she caused a "substantial amount of money" to be transferred from the Local 147 Funds into King Care. (*Id.* at 33). She admitted having caused that money to be transferred "for [her] own use rather than for the benefit of the funds for the participants of the funds." (*Id.*). King added that she "knew [she] was not entitled to the money" and that her actions were "wrong, unlawful, and unauthorized." (*Id.*). In addition, King stated that she "willfully and knowingly subscribed and filed personal tax returns between 2004 and 2007 that were false[.]" (*Id.*). She "knew that the tax returns were false because they did not report a substantial amount of income [she] received from King Care." (*Id.*).

At the conclusion of the proceeding, the Court found that King had knowingly and voluntarily entered her plea, and that there was a sufficient factual basis for the plea. (*Id.* at 38). The Court also found that she was "fully" competent. (*Id.* at 14). Therefore, the Court adjudged King guilty on both counts of the Information. (*Id.* at 38).

## KING'S SENTENCING

On June 21, 2012, the parties appeared before the Court for King's sentencing. 22 (Sentencing Transcript, attached hereto as Exhibit C). The sentencing hearing fully complied with Federal Rule of Criminal Procedure 32. First, the Court reviewed the parties' extensive sentencing submissions, including expert reports prepared by the Government and the defense, and victim impact statements. (*Id.* at 9). Next, the Court overruled several of defense counsel's factual objections to the Presentence Report, concluding that King's allocution supported the statement that King had transferred over $7 million from the Local 147 Funds bank accounts, and that other evidence supported the statement that she had disguised the embezzlement and withdrew funds in a manner intended to hide the full amount of the theft. (*Id.* at 63).

King's attorney addressed the District Court at length, requesting leniency in light of 23 King's health and related family issues. (*Id.* at 25-32). In response, the Government emphasized the seriousness of the offense conduct and the fact that King had failed to accept responsibility for her offenses. (*Id.* at 35-38).

The Court then performed its own Guidelines analysis. (*Id.* at 64-67). The Court 24 calculated the loss at $7 million for purposes of the Guidelines calculation (*id.* at 14-15, 61-62), and stated that "[i]t is indisputable that the guideline sentence is 96 months" (*id.* at 64). The Court added that "the defendant has not accepted responsibility but has pointed to others." (*Id.* at 64-65.)

Finally, the Court discussed the sentence he intended to impose. The Court made clear 25 that it had considered all of the sentencing factors set forth in Title 18, United States Code, Section 3353(a), including the Guidelines analysis, King's personal characteristics, and the seriousness of the offense. (*Id.* at 64). The Court stated that the "offense in this case was

egregious" (*id.* at 64)—that King "was able to control the expenditures from the funds; that she caused these expenditures to be paid to King Care which she controlled; . . . that these expenses were for unjustified expenses; and that she used the accounts of King Care for pay for extravagant personal expenses." (*Id.* at 60.) The Court then imposed a term of 72 months' imprisonment, which he ordered to be followed by a term of three years' supervised release. (*Id.* at 67). The Court also imposed a $200 mandatory special assessment (*id.* at 74) and entered an Order of Forfeiture as to specific property, while allowing the amount of the money judgment of forfeiture, and the amount of restitution, to be determined at a later time. (*Id.* at 68). At the conclusion of the proceeding, the Court reminded King that she had waived her right to appeal. (*Id.* at 75).

The judgment of conviction was filed and entered on July 19, 2012. A final forfeiture ⟨26⟩ order was filed on March 14, 2013. An amended judgment, specifying $21 million in restitution owed, was filed on March 28, 2013.

King did not file a direct appeal. ⟨27⟩

## ARGUMENT

It is well-settled that federal prisoners may not employ section 2255 as a substitute for ⟨28⟩ direct appeal. *See, e.g., United States* v. *Frady*, 456 U.S. 152, 165 (1982); *United States* v. *Addonizio*, 442 U.S. 178, 184-85 (1979). As the Supreme Court explained in *Frady*, "[o]nce the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially where, as here, he already has a fair opportunity to present his federal claims to a federal forum." *United States* v. *Frady*, 456 U.S. at 164. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual

'prejudice,' or that he is 'actually innocent.'" *Bousley* v. *United States*, 523 U.S. 614, 622

(1998) (citations omitted); *accord Massaro* v. *United States*, 538 U.S. 500, 504 (2003) ("claims

not raised on direct appeal may not be raised on collateral review unless the petitioner shows

cause and prejudice"); *United States* v. *Warren*, 335 F.3d 76, 79 (2d Cir. 2003) ("If the defendant

fails to raise a claim of error on direct appeal, habeas relief is generally available only upon a

showing of cause and prejudice.").

  The Supreme Court has made clear that "cause" is measured by a stringent standard of   29

diligence. *See, e.g., Coleman* v. *Thompson*, 501 U.S. 722,752(1991) ("cause" is "something

external to the petitioner" that "cannot be fairly attributed to him"; "[a]ttorney ignorance or

inadvertence is not 'cause'"); *Murray* v. *Carrier,* 477 U.S. 478, 488 (1986) ("cause" standard

requires movant to demonstrate effect of some external factor, like "interference by officials").

Further, to establish prejudice, a petitioner must establish "*actual* and substantial disadvantage,

infecting [the defendant's] entire trial with error of constitutional dimensions." *Frady*, 456 U.S.

at 170.  If a defendant fails to establish "cause" and "prejudice" to excuse a procedural default,

he can obtain collateral review of his constitutional claim only by demonstrating that the

constitutional error "has probably resulted in the conviction of one who is actually innocent."

*Bousley* v. *United States*, 523 U.S. at 623.  The Supreme Court has emphasized that "'actual

innocence' means factual innocence, not mere legal insufficiency." *Id.*

  Here, Petitioner has failed to identify any external circumstance showing cause for the   30

failure to bring a direct appeal, and only her seventh requested ground for relief asserts a claim of

actual innocence.  Moreover, as will be explained below, her claims of ineffective assistance of

counsel are frivolous.  King has therefore defaulted on her first six requests for relief, which

should be rejected on that basis alone.

Other procedural bars likewise preclude the Court's review of King's Petition.  For *3)* example, King's claims are time-barred, and she explicitly waived any right to appeal a sentence within the Guidelines range.

Even if King's Petition were not time-barred, and even if Petitioner had not waived *32* collateral attacks on her sentence, King's claims are meritless.  The order denying King's motion pursuant to section 2255 should therefore be affirmed.

### I.     King's Petition is Barred by the AEDPA's One-Year Statute of Limitations

As a threshold matter, King cannot prevail in her Petition because it is untimely.  *33* Section 2255 motions are subject to a one-year period of limitation that is calculated from the latest of: (1) the date on which the judgment of conviction becomes final; (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.  28 U.S.C. § 2255(f).  "[F]or purposes of § 2255 motions, an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  *Moshier* v. *United States*, 402 F.3d 116, 118 (2d Cir. 2005); *accord Kapral* v. *United States*, 166 F.3d 565, 577 (3d Cir.1999) ("If a defendant does not pursue a timely direct appeal to the court of appeals, his or her conviction and sentence become final, and the statute of limitation begins to run, on the date on which the time for filing such an appeal expired.").

King's conviction, which was not appealed, became final on August 2, 2012, ten business *34*

days after a judgment of conviction was entered.[2]  Petitioner has failed to articulate any

applicable exception to the one-year statutory deadline set forth in 28 U.S.C. § 2255(f).  Neither

has Petitioner alleged any "rare and exceptional circumstances" justifying the equitable tolling of

the period of limitations. *See Walker* v. *Jastremski*, 430 F.3d 560, 564 (2d Cir.2005).  Thus,

absent any of the above exceptions or any exceptional circumstance, King's Petition, filed on

September 30, 2014, was untimely.[3]  The one-year statute of limitations applies to bar King's

Petition.

## II.   Petitioner Waived Collateral Attacks on Her Sentence

It is uncontested that the Plea Agreement with the Government bars King from appealing *35*

and collaterally attacking her sentence.  As noted above, in the Plea Agreement, King agreed that

she would not "bring a collateral challenge, including but not limited to an application under

Title 28, United States Code, Section 2255 . . . of any sentence within or below the Stipulated

Guidelines Range of 96 months' imprisonment."   (Ex. A at 9).   The Second Circuit has

repeatedly held that waivers such as these are typically valid and enforceable, and that dismissal,

where such rights are waived, is appropriate. *See, e.g., United States* v. *Lee*, 523 F.3d 104, 106

---

[2]  At the time of King's conviction and sentencing, a notice of appeal was due ten business days

after the entry of judgment.  Effective December 1, 2009, Rule 26 of the Federal Rules of

Appellate Procedure has been amended to extend the deadline to fourteen days. *See Notes of*

*Advisory Committee on 2009 amendments,* note to Rule 26, subdivisions (b)(1)(A) and (b)(3)(A).

[3]  On September 17, 2013, the Court granted King an extension until October 25, 2013 to file a

motion pursuant to 28 U.S.C. § 2255.  However, King failed to so file until September 30,

2014—nearly one year later.

(2d Cir. 2008); *United States* v. *Roque*, 421 F.3d 118, 121-24 (2d Cir. 2005); *United States* v. *Haynes*, 412 F.3d 37 (2d Cir. 2005). King's claims, to the extent they are frivolous arguments cloaked as ineffective assistance claims, should therefore be dismissed as barred by the Plea Agreement.[4]

Because the Court imposed a Guidelines sentence, King's argument that she was denied 36 the right to appeal that sentence, as reflected in her fourth requested ground for relief, should be rejected. (Petitioner's Memorandum at 187-244). King waived any such "right" in her Plea Agreement. (*See* Ex. A at 9; *see also* Ex. B at 29 (in which King stated that she had personally read the Plea Agreement before signing it)). King also repeatedly affirmed that she understood that waiver while addressing the Court under oath. (*See* Ex. B at 37-38 (in which King acknowledged her understanding of the waiver at the time of her plea proceeding), Ex. C at 75 (in which King acknowledged, at the time of her sentencing, her understanding that she had "given up or waived [her] right to appeal the sentence")). Finally, following King's plea, defense counsel confirmed what "*we discussed*, [that] as you cannot receive a sentence longer than 96 months (it is the statutory maximum), *you will not have anything to appeal*." (Petitioner's Memorandum, Ex. 2M (emphasis added)). For these reasons, King's argument that she was denied the right to appeal is unsupported and unavailing.

---

[4] In a memorandum of October 14, 2014, Attorney General Eric Holder instructed Department of Justice attorneys not to enforce previously executed collateral attack waivers when the petitioner raises ineffective assistance of counsel if: (1) ineffective assistance resulted in prejudice to the defendant; or (2) the claim raises a "serious debatable issue that a court should resolve." For the reasons stated below, neither concern is present here.

### III.   Petitioner's Guilty Plea was Knowing and Voluntary

King claims that her plea was not knowing and voluntary because her health was    *37*

compromised, and because defense counsel: (1) pressured her to plead guilty; (2) failed to

investigate the case; and (3) failed to explain to her the nature of the offenses, the loss amount,

and various provisions of the Plea Agreement.   (Petitioner's Memorandum at 6-58).   These

claims are meritless.

#### A.   Applicable Law

Rule 11(b) provides that    *38*

> Before the court accepts a plea of guilty[,] . . . the
> court must address the defendant personally in open
> court. During this address, the court must inform the
> defendant of, and determine that the defendant
> understands, the following:
> * * *
>
> (G) the nature of each charge to which the
> defendant is pleading[.]

Fed. R. Crim. P. 11(b)(1)(G). This requirement is "designed to assist the district judge in making

the constitutionally required determination that a defendant's guilty plea is truly voluntary,"

*United States* v. *Maher*, 108 F.3d 1513, 1520 (citing *McCarthy* v. *United States*, 394 U.S. 459,

465 (1969)), for "[w]ithout adequate notice of the nature of the charge against him, or proof that

he in fact understood the charge, [a] plea cannot be voluntary." *Henderson* v. *Morgan*, 426 U.S.

637, 645 n.13 (1976). Nonetheless, "while Rule 11 imposes strict requirements on what

information the district courts must convey and determine before they accept a plea, it does not .

. . tell them precisely how to perform this important task in the great variety of cases that . . .

come before them." *Maher*, 108 F.3d at 1520-21 (emphasis in original) (internal quotation

marks omitted). "What is essential . . . is that the court determine by some means that the

defendant actually understands the nature of the charges." *Id.* at 1521. "In all such inquiries, matters of reality, and not mere ritual, should be controlling." *McCarthy* v. *United States*, 394 U.S. at 467 n.20 (internal quotation marks and alteration omitted); *see also United States* v. *Torrellas*, 455 F.3d 96, 102-103 (2d Cir. 2006).

### B. Discussion

King was competent to plead guilty, and any claims to the contrary are contradicted by *39* the record. (*Compare* Petitioner's Memorandum at 25-27, 31). During the plea proceedings, neither the Government nor defense counsel expressed "any doubt as to the defendant's competence to plead guilty at this time." (Ex. B at 13). In fact, defense counsel represented that "nothing about Ms. King's physical condition in any way impacts her ability to proceed with the guilty plea today." (*Id.* at 6). King, herself, responded affirmatively when asked whether she was "feeling all right to proceed with this proceeding now" (*id.* at 7), and advised the Court that she had not "taken any drugs, medicine or pills, or . . . drunk any alcohol" over the past 24 hours. (*Id.* at 12). The Court then properly concluded that King was competent to participate in her guilty plea proceedings.

Moreover, King pled guilty only after receiving the benefit of defense counsel's reasoned *40* advice. First, counsel warned King in writing that "any expert in the duties of a fund administrator would convict you through his testimony" (Petitioner's Memorandum, Ex. 2B at 3), and that while one "just can't know" what sentence the Court would impose after a guilty plea, "it will be much, much better than when you are convicted after trial."[5] (*Id.*, Ex. 2D).

---

[5] In light of counsel's advice, King cannot credibly claim that she believed that her "only option was to plead guilty." (Petitioner's Memorandum at 16). Defense counsel simply presented a guilty plea as a preferable option that would minimize King's sentencing exposure.

Second, according to King, defense counsel "[t]horoughly" discussed the Information with her. (Ex. B at 19). Third, defense counsel reviewed with her the Plea Agreement, including the provision stipulating to loss in excess of $7 million (Petitioner's Memorandum, Ex. 2C), until she "fully" understood it. (*Id.* at 29). Finally, again according to King, defense counsel had "an extensive discussion" with her about the consequences of entering a plea of guilty to the Information. (*Id.* at 14.) King even volunteered, at the time of her guilty plea, that she was "[v]ery" satisfied with defense counsel's representation of her. (*Id.*) These facts belie King's claims that defense counsel did not explain, among other things, the nature of the offenses against her, the loss amount, and the Plea Agreement to her.

During King's guilty plea proceeding, she confirmed, under oath, that she had chosen to    41
plead guilty voluntarily. (*Compare* Petitioner's Memorandum at 12-14, 16 (claiming that counsel "pushed" King to plead guilty)). The Court advised King that she did not "have to enter this plea if you don't want to for any reason at all," and asked, "[d]o you understand that completely?" (Ex. B at 17.) King responded, "I do." (*Id.*) The Court also confirmed that no one had "offered [King] any inducements or threatened [her] or forced [her] to plead guilty or to enter into th[e] plea agreement[.]" (*Id.* at 29.)

King also confirmed that she was well advised of the charges against her. The Court, in    42
order to assure itself of King's understanding, orally summarized the allegations contained in the Information, and each element of each charge. (*Id.* at 20-24.) King stated that she understood. (*Id.*) The Court continued, asking "one more time," "just . . . to make sure," that "*even though you dispute the amounts*[,] that you are pleading guilty knowingly and voluntarily having heard all of the elements of the offense and that that is what you wish to do." (*Id.* at 39 (emphasis added)). King responded: "Yes." (*Id.*)

Finally, King provided a detailed factual proffer that provided ample basis for her plea.  43
(*Id.* at 32.)  She confirmed that she "knew that [she] was not entitled to . . . funds" that she had
caused to be transferred to King Care and then to herself (*id.* at 33), and that she knew that her
actions, including subscribing false U.S. tax returns, were "wrong and illegal[.]"  (*Id.* at 34).
This statements directly contradict King's claim, in her § 2255 Motion, that she "would not have
pleaded guilty if I had known that the conduct that [defense counsel] described as an
embezzlement was not actually an embezzlement."  (Petitioner's Memorandum at 56).

For these reasons, the Court properly concluded that King's plea was knowing and ·  44
voluntary.[6]

## IV.    Petitioner's Ineffective Assistance Claims are Meritless

King argues that counsel was ineffective for: (1) coercing her to plead guilty (Petitioner's  45
Memorandum at12); (2) failing adequately to investigate the case (*id.* at 6, 60, 79); (3) failing to
explain certain portions of the Plea Agreement, including those concerning the loss amount and
the appeal waiver (*id.* at 20, 23, 69); (4) allowing her to plead guilty despite knowing that she
was not physically competent to do so (*id.* at 72); and (5) failing to file a motion to withdraw her
guilty plea (*id.* at 72).[7]  However, King's claims are meritless.  She has failed to show that
defense counsel rendered ineffective assistance, or that King was thereby prejudiced.

---

[6] In a May 18, 2012 letter explaining why "any motion to withdraw the plea would be frivolous,"
defense counsel likewise conveyed to King the "opinion that [he]r plea was knowing and
voluntary." (Petitioner's Memorandum, Ex. 5).

[7] King's second requested ground for relief repeats many of the same claims regarding
ineffective assistance of counsel that she asserts in her first requested ground for relief.
(*Compare, e.g.*, Petitioner's Memorandum at 12 with *id.* at 60 (both arguing that defense counsel

## A. Applicable Law

A defendant seeking to attack her conviction based on ineffective assistance of counsel 46

must overcome a high hurdle.  She must: (a) show that counsel's performance fell below "an

objective standard of reasonableness" under "prevailing professional norms," and (b)

"affirmatively prove prejudice," *i.e.*, demonstrate that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."

*Strickland* v. *Washington*, 466 U.S. 668, 687-89, 693-94 (1984); *accord United States* v. *Vegas*,

27 F.3d 773, 777 (2d Cir. 1994); *Mayo* v. *Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).  In

analyzing a claim that trial counsel's performance fell short of constitutional standards, a court

"'must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance,' bearing in mind that 'there are countless ways to provide

effective assistance in any given case' and that 'even the best criminal defense attorneys would

not defend a particular client in the same way.'" *United States* v. *Aguirre*, 912 F.2d 555, 560 (2d

Cir. 1990) (quoting *Strickland*, 486 U.S. at 689).  Thus, under *Strickland*,

> [an attorney's] strategic choices made after
> thorough investigation of law and facts relevant to

"push[ed] me towards entering into a plea agreement"); and *id.* at 20 with *id.* at 69 (both arguing

that defense counsel failed to explain portions of the Plea Agreement)).  Section II of this

memorandum explains that King was well advised of the appeal waiver.  Section III of this

Memorandum explains that defense counsel did not pressure King to plead guilty, did not fail to

explain certain portions of the Plea Agreement, and did not allow her to plead guilty while

knowing that she was not competent to do so.  (*See* Government's Memorandum at 15-17).

Because King has failed to meet her high burden to prove these alleged deficiencies, and to

establish prejudice, these claims will not be addressed again in Section IV of this Memorandum.

> plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690-91. The Second Circuit has adopted the *Strickland* test in assessing claims of ineffective appellate counsel. *See Abdurrahman* v. *Henderson*, 897 F.2d 71, 74 (2d Cir. 1990).

Moreover, "[i]n assessing the attorney's performance, a reviewing court must judge his 47 conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' *Strickland*, 466 U.S. at 690, and may not use hindsight to second-guess his strategy choices." *Mayo* v. *Henderson*, 13 F.3d at 533; *see also United States* v. *Jones*, 918 F.2d 9, 11-12 (2d Cir. 1990); *Strouse* v. *Leonardo*, 928 F.2d 548, 553 (2d Cir. 1991). Thus, a defendant cannot prevail on a claim of ineffective assistance merely because he believes that his counsel's strategy was inadequate. *United States* v. *Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986). Furthermore, "[a]ctions or omissions by counsel that 'might be considered sound trial strategy' do not constitute ineffective assistance." *Mason* v. *Scully*, 16 F.3d 38, 42 (2d Cir. 1994); *accord United States* v. *Eisen*, 974 F.2d 246, 265 (2d Cir. 1992); *United States* v. *Javino*, 960 F.2d 1137, 1145 (2d Cir. 1992); *United States* v. *DiTommaso*, 817 F.2d 201, 215 (2d Cir. 1987).

Finally, even if an attorney's performance was objectively unreasonable and 48 unprofessional, the defendant must also prove prejudice. The defendant "must show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Lockhart* v. *Fretwell*, 506 U.S. 364, 369 (1993) (quoting *Strickland*, 466 U.S. at 687). The reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." *Mayo*, 13

F.3d at 534. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart* v. *Fretwell*, 506 U.S. at 369. "[T]he prejudice component of the *Strickland* test . . . focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.* at 372; *see Bunkley* v. *Meachum*, 68 F.3d 1518, 1522-23 (2d Cir. 1995).

### B. Discussion

King cannot satisfy the standard for ineffective assistance of counsel because she cannot    49
demonstrate any prejudice stemming from defense counsel's alleged failure adequately to investigate her case. *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision *not* to investigate must be [afforded] . . . *a heavy measure of deference*[.]" *Id.* (emphasis added). Moreover, where "allegations with regard to alleged counsel's errors in pre-trial preparation and investigation and trial advocacy are vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source," ineffective assistance of counsel claims cannot be established. *Vasquez* v. *United States*, No. 96 Civ. 2104 (PKL), 1997 WL 148812, at *12 (S.D.N.Y. Mar. 28, 1997) (citations and quotations omitted); *see also Davison* v. *United States*, No. 97 Civ. 490 (LAP), No. 00 Civ. 3064 (LAP), 2001 WL 883122 at *8 (S.D.N.Y. Jul. 31, 2001) ("[B]lanket assertions against . . . trial counsel's performance in a self-serving affidavit," in the absence of objective evidence to support petitioner's claim, were insufficient).

Here, King does not allege in her Declaration that defense counsel failed adequately to    50
investigate her case; she merely argues this point in her brief. (*See, e.g.*, Petitioner's Memorandum at 64). King's allegation should therefore be rejected on that basis alone, because

it is not properly supported by a sworn statement based on personal knowledge.  In any case,

King fails to make out a claim that her attorney's performance was constitutionally defective or

that she was prejudiced thereby, even if it had been alleged on the basis of personal knowledge.

*See Puglisi* v. *United States*, 586 F.3d 209, 217-18 (2d Cir. 2009) (finding no prejudice in part

because petitioner failed to explicitly claim in his factual declaration that he would have accepted

plea offer, and his own statements at sentencing undercut claim that he would have done so).

This is so because King's claims are conclusory—and patently incredible.[8]  King does not

provide any factual support for the notion that she would have been willing to forego the relative

certainty that the Plea Agreement provided in favor of facing a trial on fifteen additional counts

of money laundering and tax evasion.

 Indeed, King's claim that she would have proceeded to trial had defense counsel further   51

investigated the case contradicts the record. (*See, e.g.*, Petitioner's Memorandum at 66, 71, 92).

First, the Plea Agreement awarded King a three-level reduction for acceptance of responsibility.

Second, the Plea Agreement enabled King to plead guilty solely to the two-count Information,

rather than risk a high likelihood of conviction on fifteen additional counts of money laundering

and tax evasion.  These additional counts are reflected in the Second Superseding Indictment, S2

10 Cr. 122 (JGK), that was returned on January 24, 2011.  Third, before her guilty plea, King

---

[8]  King raises a host of additional conclusory claims for which she has failed to show prejudice.

(*See* Petitioner's Memorandum at 85-138).  For example, King claims that she was denied

effective assistance because defense counsel was "not familiar enough with the documents . . . of

my case" (Petitioner's Memorandum at 79, 85), and that defense counsel failed to advise her that

a determination of the amount of forfeiture would be postponed until after the sentencing hearing

(*id.* at 81).  These claims are entirely inadequate to warrant a hearing and should be rejected.

discussed with defense counsel the fact that she "was not capable of proceeding to trial at that point."[9] (Petitioner's Memorandum at 25). Finally, after King's guilty plea but before her sentencing, the Government offered King the opportunity to abandon her plea agreement and proceed to trial. (*See* May 11, 2012 Hearing Transcript, attached hereto as Exhibit D, at 8.) However, King declined, chose to abide by her plea agreement, and agreed to acknowledge, at sentencing, that she had embezzled at least $7 million.

In addition, defense counsel's decision not to move to withdraw King's plea is no 52 deficiency under *Strickland*. (*Compare, e.g.*, Petitioner's Memorandum at 34, 85). First, defense counsel advised King in writing that any motion to withdraw her plea would be "frivolous." (Petitioner's Memorandum, Ex. 5 at 3). Defense counsel explained that the Court would likely deny a motion to withdraw due to, among other things, "the clear and uncontested statements that [King] made at the time of making [he]r plea." (*Id.* at 3). Second, counsel stated that such a motion "would be affirmatively detrimental to your best interests" because "you will be scheduled for trial on the fifteen remaining counts of the Indictment," which "will almost certainly result in you receiving a significantly higher prison sentence than you would otherwise receive." (*Id.*). Because defense counsel's reasoned strategy deserves deference as an effort to protect King's penal interests, King has not credibly proven any deficiency, and has not established prejudice.

### V.   Petitioner's Claims Regarding Prosecutorial Misconduct Are Wholly Unfounded

King argues that the prosecution (1) fabricated arguments (Petitioner's Memorandum at 33), 53 (2) "intentionally relied on materially false statements" (*id.* 46); (3) "did not have any evidence to present in court" (*id.* at 47, 51); (4) improperly seized her assets (*id.* at 10); (5) intimidated her family members (*id.* at 38); (6) compromised the adversarial process by seizing materials from

---

[9] King stated that she was, however, prepared to proceed with her guilty plea. (*See* Ex. B at 13).

the King Care offices (*id.* at 258), and (7) pressured her to plead guilty (*id.* at 9).  These
conclusory claims of prosecutorial misconduct are meritless and do not come close to justifying
the drastic remedy of reversal that she seeks.

### A. Applicable Law

A defendant claiming prosecutorial misconduct must demonstrate that the impropriety       54
that is alleged caused her "substantial prejudice."  *United States* v. *Bautista*, 23 F.3d 726, 732
(2d Cir. 1994); *United States* v. *LaMorte*, 950 F.2d 80, 83 (2d Cir. 1991).  In evaluating alleged
prosecutorial misconduct, this Court has held that "[t]he severity of the misconduct, curative
measures, and the certainty of conviction absent the misconduct are all relevant to the inquiry."
*United States* v. *McCarthy*, 54 F.3d 51, 55 (2d Cir. 1995).  Reversing a conviction for
prosecutorial misconduct is a "drastic remedy," *United States* v. *Valentine*, 820 F.2d 565, 570
(2d Cir. 1987), that is warranted only where the alleged misconduct "so infected the trial with
unfairness as to make the resulting conviction a denial of due process," *Darden* v. *Wainwright*,
477 U.S. 168,181 (1986) (internal quotation marks omitted).  King fails to meet this stringent
standard.

### B. Discussion

First, as for King's bare assertion that the Government failed to conduct an       55
adequate investigation, King states simply that the Government failed to contact attorneys
associated with the Civil Lawsuit.  She does not explain why this purported violation warrants
reversal of the conviction.  (Petitioner's Memorandum at 141-45).  Because she fails to advance
any colorable argument in this regard, this Court should not consider her claim.  *See Dedushaj* v.
*Graham*, No. 07 Civ. 5401 (JGK), 2008 WL 4858242, at *2 (S.D.N.Y. Nov. 7, 2008) ("Self-
serving conclusory allegations . . . are insufficient to establish ineffective assistance of

counsel."); *United States* v. *Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987) (citations omitted) (vague and general assertions are not admissible to warrant a hearing on ineffectiveness claims). In any event, the Government's investigation was thorough and meticulous, and amply documented King's criminal conduct.

Second, King's claim that the Government "improperly restrained the funds that were        56 intended specifically for defense costs" is likewise conclusory. (Petitioner's Memorandum at 10; *see also id.* at 144, 247-258). Moreover, in *Kaley* v. *United States*, 677 F. 3d 1316 (2014), the Supreme Court affirmed the Government's use of a pre-trial asset freeze to preserve the availability of forfeitable assets during the pendency of criminal proceedings. The Court held that such assets may be frozen even if the defendant would have designated those funds for the retention of defense counsel of choice. King's claim that the Government denied her the choice of counsel by restraining funds that were to be used for defense costs, as repeated in her fifth requested ground for relief, should therefore be denied. (Petitioner's Memorandum at 247-258).

Third, King's argument that the Government "knowingly submitted perjured testimony to        57 the Court" in the form of the "Epstein Affidavit" (the "Affidavit") flatly contradicts findings that the Court made at sentencing. (Petitioner's Memorandum at 146; *id.*, Ex. 6). Leonard Epstein was a management trustee of the Local 147 Funds, who concluded that from 2002 until October 2008, King "did not seek (or obtain) the Trustees' approval" to use the Local 147 Funds to finance what King described as "special projects." (Petitioner's Memorandum, Ex. 6 at 6). The Affidavit added that Epstein understood that "King's monthly fee from her contracts with the Local 147 . . . Funds would pay for any expenses she incurred." (*Id.*) The Court credited these assertions by accepting the facts set forth in paragraph 17 of the Presentence Report. Paragraph 17 rejected King's "claim . . . that she was entitled to the entire amount she took from the Local

147 Funds because she had been tasked with a number of additional projects by the funds' Trustees[.]" (PSR ¶ 17). Instead, paragraph 17 made clear that "neither the stated additional work nor the proffered bills justified the millions of dollars taken by King from the Local 147 Funds." (*Id.*) The Court therefore found the Epstein Affidavit to be accurate and reliable.

The Court's determination that the "government's expert report is more credible" than $58$ King's further undermines King's claim of perjury. (Ex. C at 62). In support of the perjury claim, King argues, *inter alia*, that the "Vasil Report" contradicts the Affidavit. In that report, which defense counsel submitted to the Court in connection with sentencing, Certified Public Accountant Michael Vasil concluded not only that King owed no taxes to the IRS as a result of the charged offenses, but that King was actually owed a refund from the IRS. However, in its sentencing submission, the Government explained why the Vasil Report was fundamentally flawed. First, the Vasil Report failed to account for millions of dollars of income to King, including the money that King admitted to embezzling and admitted that she did not report as income. In other words, the Vasil Report ignores that King was convicted of embezzlement and tax fraud and proceeds as if King had not embezzled a single penny from the Local 147 Union. Second, the Vasil Report grossly overstated King's legitimate business expenses. Third, the Vasil Report relied on King Care LLC's books and records, which are unreliable and inaccurate. Each of these arguments was explained in a detailed, 14-page affidavit by IRS Revenue Agent Valerie Catanzaro that was supported by numerous exhibits. Moreover, the Court credited the Government's arguments at sentencing. This Court found that the "government's expert report [wa]s more credible because among other reasons the defendant's report does not include as income to the defendant the admitted millions of dollars that she embezzled." (Ex. C at 62.)

Accordingly, neither the Vasil Report nor any other evidence contradicts the validity of the Affidavit.

King's remaining claims regarding prosecutorial misconduct are simply bare and baseless   *59* allegations. Petitioner offers no evidence or sworn declarations to support the arguments that the Government: (1) made "numerous misrepresentations" in Court (Petitioner's Memorandum at 155); (2) misled the grand jury (*id.* at 160); (3) destroyed a "massive amount" of exculpable material (*id.* at 164); (4) "caused the process to lose its character as a confrontation between adversaries" by seizing materials from King Care pursuant to a search warrant (*id.* at 258-66); or (5) prosecuted without evidence of wrongdoing (*id.* at 171). These claims should therefore be rejected.

## VI.   Petitioner is Not Actually Innocent

King's "actual innocence" claim largely regurgitates the arguments presented in previous   *60* requests for relief, and addressed above; namely, that she pleaded guilty "based on . . . incorrect legal advice," that the Affidavit was perjury, that the Vasil Report shows that "there was no embezzlement in this case," *etc.* (Petitioner's Memorandum at 263). King also argues that "there was insufficient evidence to support the convictions when I was sentenced." (*Id.*) However, King *admitted* her guilt under oath—and chose not to withdraw her guilty plea. During the October 21, 2011 plea proceeding, King stated that

> Between 2002 and 2008 . . . I caused to be transferred a substantial amount of money from the bank accounts [of the Local 147 Funds] into King Care. I caused that money to be transferred for my own use rather than for the benefit of the funds for the participants of the funds. I knew I was not entitled to the money and I knew that [what] I was doing [was] wrong, unlawful, and unauthorized. I

> was aware that those funds were governed by
> ERISA at that time.

(Ex. B at 33).  King added that

> I also willfully and knowingly subscribed and filed
> personal tax returns between 2004 and 2007 that
> were false as to material matters.  I knew that the
> tax returns were false because they did not report a
> substantial amount of income I received from King
> Care.  I verified the false tax returns by written
> declaration that they were made under penalty of
> perjury.

(*Id.*)

Ample additional evidence, including the Epstein and Catanzaro Affidavits, materials    61

seized from the offices of King Care LLC, individual and business bank records, and tax records,

supported the Government's prosecution.

At sentencing and in her sentencing submissions, King continued to maintain her guilt    62

through counsel.  Accordingly, this Court stated at sentencing that the fact of King' guilt is

"supported by the defendant's agreement to forfeit as the proceeds of the crime the horses,

jewelry, the funds in numerous accounts among other specific assets." (Ex. C at 60).  Moreover,

this Court specifically rejected King's "attempt[] to paint a different picture at sentencing" about

the nature of the embezzlement. (Ex. C at 59).  During sentencing proceedings, King claimed

that she merely "caused the benefit funds to pay for expenses that were properly charged to other

entities such as the welfare fund and the union itself," and that she "did . . . [additional] work and

was compensated appropriately for it although . . . the money should not have come out of the

benefit funds[.]" (Ex. C at 59-60).  This Court found that King's argument to be "not credible

for several reasons." (*Id.* at 60).  Instead, this Court described as "more credible" the fact that

King

> was able to control the expenditures from the funds;
> that she caused these expenditures to be paid to
> King Care which she controlled; and that these
> expenses were for unjustified expenses; and that she
> used the accounts of King Care to pay for
> extravagant personal expenses.

(*Id.*)

For these reasons, King has failed to establish actual innocence. *See Bousley*, 523 U.S. at

623.

## CONCLUSION

For the foregoing reasons, this Court should deny King's motion to vacate and set aside

her conviction and sentence. Because King has not made a substantial showing of the denial of a

constitutional right, no certificate of appealability should issue.[10]

_____

[10] The Government respectfully submits that the arguments set forth above are dispositive

of all of the claims raised by the Petition, and that the Court should, on the record currently

before it, deny the Petition in its entirety. In the event that the Court determined that certain of

the claims raised by King require additional development of the record, then the Government

respectfully requests that the Court issue an order requiring King's attorney to submit an

affidavit providing further details with respect to King's claims. Such an order is appropriate in

light of the American Bar Association's recent guidance on this issue. *See* American Bar

Association, Standing Committee on Ethics and Professional Responsibility, Formal Opinion 10-

456, July 14, 2010, at 1 (noting that even when an attorney is accused of ineffective of counsel

by his client, "it is highly unlikely that a disclosure in response to a prosecution request, prior to

a court-supervised response by way of testimony or otherwise, will be justifiable."). The Court

has the power to further develop the record in this fashion without the need to conduct a full-

Dated: New York, New York
      March 16, 2015

                       Respectfully submitted,

                       PREET BHARARA
                       United States Attorney

By:      _____
                       Jennifer Lane Gachiri
                       Assistant United States Attorney
                       (212) 637-2209

---

blown hearing. *See Chang* v. *United States*, 250 F.3d 79, 86 (2d Cir. 2001) ("[C]ourt may use

methods under Section 2255 to expand the record without conducting a full-blown testimonial

hearing.").

## CERTIFICATE OF SERVICE

I, Jennifer Lane Gachiri, affirm under penalty of perjury that I am an Assistant United States Attorney in the Southern District of New York, and that, on March 9, 2015, I caused a copy of the foregoing to be served on Petitioner by certified mail at the following address:

Melissa King
62944-054
FCI Coleman Medium Satellite Camp
P.O. Box 1027
Coleman, FL 33521

Dated: New York, New York
March 16, 2015

/s/ Jennifer Lane Gachiri
Jennifer Lane Gachiri
Assistant United States Attorney
(212) 637-2209