(e) Assemble annually the data requested by the Funds' actuarial consultant for use in the annual review and actuarial certification of the Pension Fund and annual reports for the Welfare Fund; provided, however, that to the extent this requires the transmission to the consultant of data for periods prior to King's retention, King bears no responsibility for the accuracy thereof and provided further that nothing contained herein shall require the Fund Manager to reconstruct records for periods prior to its retention.

(f) Preparation and distribution of eligibility lists to interested parties (with the approval of the Trustees of the Fund).

(g) Maintenance of an "employee record file," which will reflect the employee's name, date of birth, address, social security number, name of beneficiary, marital status, sex, information as to eligible dependents, if any, and selection of benefit plan(s) and options.

(h) Computation of the payment of insurance premium(s) in accordance with the contract(s) maintained with each of the Funds' present or future insurance carriers and the Fund's eligibility rules.

(i) Verification of all bills submitted by the Funds' service providers and other invoices received with respect to the Fund, and arrangement for payment of approved expenses in accordance with the procedures established by the Trustees of the Fund.

(j) Filing with the appropriate government agencies, on a timely basis, Forms 990, 5500, PBGC-1, SSA, 1099, W-2, W-2P, summary plan descriptions, summary material modifications and any other government reports specifically denominated by the Trustees following preparation of same by the Funds' professional staff and/or service providers and execution of same by the Trustees.

3

(k) Performance of the following functions with respect to pension benefit applications in order that such applications can be acted upon by the Trustees:

(1) Receive requests for benefit applications employees and/or their dependents ("Applicants") and forward the appropriate forms, together wit instructions, to such Applicants upon request; receive and acknowledge and review applications for errors and omissions, review and evaluate evidence of employment and other items of information to be done in accordance with the procedures approved by the Trustees.

(2) Confer with Applicants upon their request (or when otherwise necessary) and obtain add information from sources other than the Applicant, when such additional information is required by the Trustees to determine the eligibility of an Applicant for a pension benefit.

(3) Assemble all pertinent information and compute pension or other credits and benefits for the Applicants in accordance with the appropriate Plan rules and regulations.

(4) Advise the Trustees of the appropriate Fund as to the results of these computations and the resultant eligibility or ineligibility of each Applicant processing of the application has been completed. This shall be done by way of periodic approval lists, copies of which shall be furnished to all Trustees of the Fund for their review, approval and execution. Said approval lists shall contain the name of each Applicant and a summar of the information supporting his eligibility or ineligibility benefit. Cases where a dispute or question exists as to the interpretation of Plan provisions relating eligibility for benefits shall be presented separately to the Trustees for review and advice by the Trusteea and the appropriate Fund professionals.

(1) Maintenance of a current roster of pensioners and beneficiaries in a form prescribed by the Trustees of the Pension Fund.

(m) Preparation of annual (beginning with calendar year 1988) age and dependency

4

tabulations, if requested by the Trustees of the Fund.

(o) Maintenance of a summary of death benefits from the Fund.

(p) Arranging for the distribution of enrollment material for the various coverage options presently provided by each Fund, receive enrollment cards and maintain a roster of employees and the coverage selected.

(q) Arranging for the printing and distribution to appropriate persons (as determined by the Trustees) of all forms, descriptive booklets, annual and summary annual reports and other materials used and/or created in the administration of the Fund.

(r) Answering all telephone calls and mail or other inquires from contributing employers and from participants and their beneficiaries with respect to the requirements and procedures of the plans maintained by the Trustees of the Fund (including the details of the benefits provided under the Funds and the eligibility requirements therefor and the process for obtaining an submitting claim forms).

(s) Maintenance of all files and documents provided to the Fund Manager with respect to the Fund and making such documents and information available for review by the Trustees and, with the consent of the Trustees, the Funds' counsel, actuarial consultant, auditor and other professionals.

(t) Attendance at meetings of the Trustees and notification to all parties invited to such meetings by the Trustees in writing of the time, date and place of each meeting of the Trustees; distribution of an agenda for each meeting, as approved by the Trustees; and preparation, reproduction and distribution of reports on collections, investments, etc. in accordance with the Trustees' instructions.

The foregoing list of services represents the duties normally fulfilled by King in its

5

role as a third party administrator to multiemployer pension, additional benefit security and annuiy funds. The parties recognize that the literal description of services may not precisely reflect the specific needs and features of the Fund and acknowledge that reasonable deviations from the above description of services may be required in order properly and adequately to service the needs of the Fund.

2. In consideration of the services enumerated in paragraph "1" of this Agreement, the Trustees of the funds agree collectively to pay KingCare, LLC. the sum of ten thousand ($10,000.) dollars per month, said fees to be payable quarterly in advance prior to the quarter for which the services are to be rendered. All services outside this fee which include additional staffing, computer technicians, computer system design and engineering, etc. will be billed by KingCare at the rate of 3 (three) times the hourly labor cost.

3. All disbursements will be reimbursed to King by the Fund. These costs include printing, duplicating, postage, messengers, paper, diskettes, binders, etc. Storage costs relating to those records of the funds stored by a third party shall also be borne by the Fund as well as long distant phone calls for benefit inquiry. The Funds will also pay and reimburse King for their cost of computer equipment, their use of telephone lines, as will as any other cost paid by King on behalf of the Funds. A reconciliation of expenses will be done annually. It is not the intention of the parties that King advance to the Funds the cost of the items needed by the Plans in order to appropriately manage the Funds.

4. Services which are not normally required in administering the Funds, services which could not reasonably be anticipated at the time this Agreement was executed and services requiring significant expenditures of time not reasonably contemplated at the time this Agreement was executed are not within the scope of the Agreement and the Trustees agree that the Fund will be

6

billed separately for the reasonable costs of providing such services. The services described in this paragraph shall include but not be limited to reconstruction or other work performed which relates to periods prior to King's retention as Fund Manager, work performed as a result of statutory or regulatory changes and work performed in connection with benefit or eligibility changes enacted by the Trustees.

5. All records received and maintained by King for the purpose of performing its obligations hereunder shall be and remain the property of the Fund. All computer software used and/or developed by King in connection with and/or for the purpose of performing its obligations hereunder shall be and remain the sole and exclusive property of King. Upon termination of this Agreement and in the event no successor agreement is executed, King agrees to deliver the property of the Fund to the Trustees.

6. The Fund Manager shall have no power to make commitments or execute binders or other contracts on behalf of the Trustees of the fund without specific authority in writing from the Trustees to do so.

7. In agreeing to perform the services listed in this Agreement, neither the Fund Manager nor any employee thereof has assumed the role of Fund "administrator", as that term is defined in Section 3(16) of the Employee Retirement Income Security Act of 1974 as amended ("ERISA"), that role having been expressly assumed and retained by the Trustees of the Fund.

8. In fulfilling its obligations under this Agreement, it is the intention of the parties that King perform purely ministerial functions within the framework of policies, interpretations, rules, practices and procedures as heretofore adopted and as hereafter amended by the Trustees of Fund. Accordingly, it is not the intention of the parties hereto that either the Fund Manager or any employee thereof become a "fiduciary" (as that term is defined in Section 3(21) of ERISA) with

7

respect to any of the Fund, by virtue of the obligations undertaken by King pursuant to this Agreement.

9. This Agreement shall take effect on January 1, 2002 and continue in effect until December 31, 2006.

10. The parties agree that KingCare bears no responsibility whatsoever for the accuracy of records pertaining to periods prior to its retention. King agrees to advise the Trustees to the extent it has actual knowledge of errors in the Funds records with respect to such prior periods but it shall be under no obligation to locate such errors. King shall be entitled to rely fully of the Funds' records with respect to such prior periods in carrying out its duties hereunder. To the extent the condition of the Funds' records with respect to such prior periods prevents, delays or otherwise adversely affects the performance of King's duties hereunder, King shall not be responsible therefor.

11. All information furnished by King to the Trustees shall be regarded as confidential by the Trustees. King shall regard as confidential all information concerning the affairs of the Funds, their Trustees, participants and beneficiaries.

12. This Agreement (including any exhibits or other agreements incorporated herein by reference) sets forth the entire understanding of the parties hereto and is intended to be the complete and exclusive statement of the terms hereof. This Agreement may not be modified or amended except by a writing signed by the parties hereto. This Agreement supersedes and cancels any and all prior agreements between the parties, whether written or oral, relating to the Fund.

13. To the extent not superseded by ERISA, this Agreement shall be construed pursuant to, and shall be governed by, the internal laws of the State of New York applicable to contracts made and to be performed within the State of New York (without reference to any conflict of law provisions).

8

14. To assure continuity of services, this contract will renew automatically, on an annual basis, at the end of each period, unless cancelled by either party or by written notice at least 60 days in advance of its expiration date. It is understood that adjustments to reach automatically renewed retainer may be made in any such post retainer annual period, on a mutually agreed upon basis.

15. It is the intention of the parties that KingCare, LLC. shall rent office space in the Bronx, NY with a back up office in Irvington to supplement the Bronx space (for computers and files) and that all cost associated with the Bronx and Irvington office will be borne by the Funds. The office space in the Bronx will be paid directly by the Funds to the landlord and the costs of running the Irvington will be billed to the Funds and paid to King. The Office space in the Bronx will be used by the Funds as a needed office to meet with Participants that are unable to come to the office in NYC. All expenses related to these two offices will be paid by the Fund and any additional staffing will also be reimbursed by the Funds to King.

KingCare, LLC

By: _/s/ Melissa King_

Melissa G. King, President


LOCAL 147 TUNNEL WORKERS RETIREMENT FUNDS

By: _/s/ Richard Fitzsimmons_  By: _/s/ Dolore E. Phy_

Union Trustee  Employer Trustee

**FROM:** Melissa King, Reg. No. 62944-054
Federal Correctional Complex - Camp
P.O. Box 1027
Coleman, FL 33521

**TO:** Clerk of Court
Southern District of NY
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

F.C.C. COLEMAN
MAIL ROOM
846 N.E. 54TH TERR
COLEMAN, FLORIDA
33521

THE ENCLOSED LETTER WAS PROCESSED THROUGH SPECIAL MAILING AND HAS BEEN INSPECTED. IF THE WRITER RAISES A QUESTION OR A PROBLEM OVER WHICH THIS FACILITY HAS JURISDICTION, YOU MAY WISH TO RETURN THE MAIL FOR FURTHER INFORMATION OR CLARIFICATION. IF THE WRITER ENCLOSED CORRESPONDENCE FOR FORWARDING TO ANOTHER ADDRESSEE, PLEASE RETURN THE ENCLOSURE TO THE ABOVE ADDRESS.

6-25-15
DATE   MAIL ROOM STAFF

LARGE-FRB June 2014
ID: 12 x 12 x 5 1/2
OD: 12 1/4 x 12 1/4 x 6
ODCUFT: 0.521